IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Abaker Haron, | No. CV 26-02323-PHX-MTL (MTM) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| Eric Rokosky, et al., | |
| Respondents. | |

TO THE HONORABLE MICHAEL T. LIBURDI, UNITED STATES DISTRICT JUDGE:

Petitioner, through counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging his immigration detention. (Doc. 1.)

I.    SUMMARY OF CONCLUSION

Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b) by the Department of Homeland Security Immigration and Customs Enforcement and has been detained since August 11, 2024. Petitioner applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). After an April 8, 2025 merits hearing, an immigration judge found Petitioner not credible and denied his requests for asylum, withholding of removal, and protection under the CAT. The immigration judge denied Petitioner's motion for reconsideration, and the Board of Immigration Appeals dismissed his appeal. Petitioner filed a petition for review to the Ninth Circuit Court of Appeals, which issued a temporary stay. He raises a Fifth Amendment due process

challenge to his mandatory detention and seeks a bond hearing because his detention has become unreasonably prolonged. Because Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b), and Petitioner is not constitutionally entitled to a bond hearing, the Court will recommend that the Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

## II.   BACKGROUND

Petitioner contends he is a citizen and national of the Republic of Sudan who entered the United States on August 11, 2024. (Doc. 1 at 15.) Petitioner was encountered by immigration officials that same day and processed for expedited removal under 8 U.S.C. § 1225(b)(1). (*Id.*) Petitioner was referred to United States Citizenship and Immigration Services who made a positive fear finding after a credible fear interview. (*Id.*) On August 23, 2024, Petitioner was served with a Notice to Appear charging him with violating Immigration and Nationality Act ("INA") Sections 212(a)(6)(A)(i) as an alien present without admission or parole and 212(a)(7)(A)(i)(I) as an alien who did not have valid entry documents at the time of application for admission. (*Id.*)

On May 20, 2025, an immigration judge denied all applications for relief. (*Id.*) Petitioner timely appealed to the Board of Immigration Appeals, and that appeal was dismissed on November 6, 2025. (*Id.* at 16.) Petitioner then filed a petition for review with the Ninth Circuit Court of Appeals, which issued a temporary stay. (Doc. 7.)

## III.   PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS

In his Petition, Petitioner claims his prolonged detention violates his Fifth Amendment due process rights. Petitioner seeks release through an individualized bond hearing. (Doc. 1.)

Respondents filed a Response on May 5, 2026, and Petitioner filed a Reply on May 18, 2026. (Docs. 15, 16.)

## IV.   DISCUSSION

The district court is empowered to issue a writ of habeas corpus where an individual is held "in custody in violation of the Constitution or laws or treaties of the United States .

. . ." 28 U.S.C. § 2241(c)(3). The language of § 2241 and "the common-law history of the writ" makes clear "that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475 484 (1973) (noting that the writ of habeas corpus "was early recognized by [the Supreme] Court as a 'great constitutional privilege'"). The Supreme Court has made clear that § 2241 applies to noncitizens challenging their immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001).

Because Petitioner challenges his prolonged civil detention, the Court has jurisdiction to address the instant Petition. *See Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) ("[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of the removal order . . . .").

### A.    Detention Pursuant to 8 U.S.C. § 1225(b)

Because Petitioner is an applicant for admission subject to expedited removal and his claims for asylum are currently pending before the Ninth Circuit, the Court finds that he is detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii). Petitioner concedes this point.

There are three statutes that govern immigration detention of a noncitizen: 8 U.S.C. §§ 1225, 1226, and 1231. "A noncitizen's place within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023) (cleaned up).

Generally, the decision over who may enter the United States and remain here after entry "begins at the Nation's borders and port of entry" and is governed by 8 U.S.C. § 1225. *See Jennings v. Rodriguez*, 583 U.S. 281, 286-87 (2018). "An alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed . . . an applicant for admission."[1] 8 U.S.C. § 1225(a). Applicants for admission are

---

[1] An applicant for admission is also referred to as an "arriving alien." *See* 8 C.F.R. § 1001.1(q).

inspected by immigration officers to ensure that they may be admitted pursuant to federal immigration law. *See Jennings*, 583 U.S. at 287.

Applicants for admission fall under one of two categories, § 1225(b)(1) and § 1225(b)(2). Applicants falling under § 1225(b)(1), expedited removal, are those noncitizens who were "initially determined to be inadmissible because of fraud, misrepresentation, or lack of valid documentation." *Banda v. McAleenan*, 385 F.Supp.3d 1099, 1111 (W.D. Wash. 2019). These individuals are subject to an expedited removal process without a hearing before an IJ. 8 U.S.C. § 1225(b)(1). However, if "the alien indicates either an intention to apply for asylum . . . or a fear of persecution," they may be provided a hearing before an IJ following a credible fear screening by an asylum officer. *Id.* § 1225(b)(1)(A)(i)-(ii), (B)(i)-(iii). "Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution . . . ." *Id.* § 1225(b)(1)(B)(iii)(IV). "If the officer determines at the time of the interview that an alien has a credible fear of persecution . . . the alien shall be detained for further consideration of the application for asylum." *Id.* § 1225(b)(1)(B)(ii).

In the instant action, Petitioner is detained pursuant to § 1225(b)(1)(B)(ii) – a noncitizen with a credible fear of prosecution that "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). Accordingly, because Petitioner is statutorily subject to mandatory detention pursuant to 8 U.S.C. § 1225(b) while the denial of his asylum claims is reviewed by the Ninth Circuit, the Court will proceed to Petitioner's due process argument.

**B.     Due Process**

Petitioner argues his prolonged detention violates his Fifth Amendment rights to due process and seeks release through an individualized bond hearing. In response, Respondents argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) and the Due Process Clause does not require an individualized bond hearing.

Although the record before the Court reflects that Petitioner has spent a significant period in immigration detention while pursuing his claims, the Court finds that the

governing precedent concerning arriving aliens detained under 8 U.S.C. § 1225(b) presents substantial obstacles to his due process challenge.

Petitioner argues that his continued mandatory detention without an individualized bond hearing violates the Due Process Clause. Petitioner's argument finds support in a number of district court decisions recognizing that prolonged detention may, at some point, raise constitutional concerns. *See, e.g.*, *Banda v. McAleenan*, 385 F.Supp.3d 1099, 1117 (W.D. Wash. 2019) ("[T]he Court joins the vast majority of other district courts to conclude that unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process."); *Gomez v. Doe*, No. CV 25-03255-PHX-JJT (CDB), 2025 WL 3269886, at *11 (D. Ariz. Nov. 3, 2025) (holding that "[t]he Fifth Amendment's Due Process Clause extends to all persons, regardless of status" and applying a balancing test to determine what procedural safeguards apply to a noncitizen challenging his detention under § 1225(b)(2)(A)), *report and recommendation adopted sub nom. Gomez v. Unknown Party*, 2025 WL 3269055 (D. Ariz. Nov. 24, 2025); *Avakian v. Cantu*, No. CV-26-00104-PHX-SHD, 2026 WL 746351, at *2 (D. Ariz. Mar. 17, 2026) (applying due process considerations to petitioner's prolonged detention under § 1225(b)).

Courts have applied a variety of balancing tests to evaluate on a case-by-case basis whether mandatory detention under § 1225(b) without a bond hearing violates due process. *See, e.g.*, *Imani v. Cantu*, No. CV 26-01933-PHX-DJH (CDB), 2026 WL 1406307, at *10 (D. Ariz. May 4, 2026) ("The [Ninth Circuit] has not provided the lower courts with guidance regarding the point at which an immigration detainee's prolonged mandatory detention under § 1225(b) without a bond hearing becomes unconstitutional. The District Courts within the Ninth Circuit's jurisdiction have generally found the test stated in *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) applicable with regard to those detained pursuant to § 1225(b) . . . , although some courts have instead applied the test stated in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) . . . which has often been applied in situations involving detention under § 1226(c)."), *report and recommendation adopted*, 2026 WL 1398596 (D. Ariz. May 19, 2026).

Petitioner's circumstances evoke similar concerns. He has remained in custody since August 11, 2024, when he entered the United States, was encountered by immigration officials that same day, and processed for expedited removal under 8 U.S.C. § 1225(b)(1). (Doc. 1 at 15.) Petitioner was subsequently denied asylum, and his appeal of that decision remains pending before the Ninth Circuit. (*Id.* at 15-16; Doc. 7.) The length of his detention is undoubtedly burdensome and has occurred while his claims for asylum remain unresolved.

Nevertheless, existing Supreme Court and Ninth Circuit precedent have distinguished between noncitizens who have established substantial ties to the United States and those like Petitioner who are treated, for legal purposes, as applicants for admission at the threshold of entry. In *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), the Supreme Court reiterated that Congress possesses broad authority to determine the conditions under which an alien may enter the United States and that an alien seeking initial admission generally cannot claim procedural due process rights beyond those provided by statute. The Court relied upon a long line of cases, *see, e.g., Nishimura Ekiu v. United States*, 142 U.S. 651 (1892), *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537 (1950), and *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953), reaffirming that Congress may prescribe the procedures governing admission and exclusion decisions. *Thuraissigiam*, 591 U.S. at 138-39 ("The power to admit or exclude aliens is a sovereign prerogative," "the Constitution gives 'the political department of the government' plenary authority to decide which aliens to admit," and "a concomitant of that power is the power to set the procedures to be followed in determining whether an alien should be admitted." (internal citations omitted)).

This court confronted a closely related issue in *Ibarra-Perez v. Howard*, 468 F. Supp. 3d 1156 (D. Ariz. 2020). There, an alien detained pursuant to § 1225(b) argued that his prolonged detention without a bond hearing violated due process. After reviewing applicable Supreme Court and Ninth Circuit authority, the court concluded that detention of an arriving alien during the pendency of removal proceedings remained constitutionally

permissible. *Id.* at 1177. The court observed that neither *Jennings v. Rodriguez*, 583 U.S. 281 (2018), nor subsequent Ninth Circuit decisions had undermined prior precedent suggesting that mandatory detention under § 1225(b) may continue for the duration of pending removal proceedings. *Id.*

Importantly, *Ibarra-Perez* acknowledged the existence of contrary district court authority, including *Banda*, and recognized the liberty interests at stake. However, it ultimately declined to adopt those decisions because they did not fully account for the entry-fiction doctrine and related Ninth Circuit precedent governing arriving aliens detained under § 1225(b).[2] *Id.* Specifically, the court stated,

> [T]he Court must do its best to discern and apply the law of the Ninth Circuit as it currently stands. As discussed, [*Barrera-Echavarria v. Rison*, 44 F.3d 1441 (9th Cir. 1995) (en banc)] suggests it is constitutionally permissible to require Petitioner to remain in custody for the duration of his removal proceeding. If anything, the Ninth Circuit seemed to ratify that understanding of *Barrera-Echavarria* in *Rodriguez II* [*Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013)] and *Rodriguez III* [*Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015)]. And neither the Supreme Court's decision in [*Jennings*] nor the Ninth Circuit's remand order in *Rodriguez V* [*Rodriguez v. Marin*, 909 F.3d 252 (9th Cir. 2018)] casts any doubt upon the continued validity of those portions of *Barrera-Echavarria*, *Rodriguez II*, and *Rodriguez III*.

*Ibarra-Perez*, 468 F. Supp. 3d at 1177.[3] Notably, the court recognized that 1225(b) does not authorize the Attorney General to incarcerate detainees for an indefinite period and

---

[2] The entry fiction doctrine is based upon the "distinction between those aliens who have come to our shores seeking admission, such as petitioner, and those who are within the United States after an entry, irrespective of its legality." *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). The Supreme Court has noted that the latter category of noncitizens has "additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Id.* (quoting *Mezei*, 345 U.S. at 212); *Thuraissigiam*, 591 U.S. at 139 ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned") (quoting *Shaughnessy*, 338 U.S. at 544). Those noncitizens who are on the "threshold of initial entry" are not considered "to have 'effected an entry[.]'" *Thuraissigiam*, 591 U.S. at 140 (quoting *Zadvydas*, 533 U.S. at 693).

[3] With regards to *Banda*, the court specifically stated, "[i]n *Banda*, which is the district court decision on which Petitioner primarily relies, the court did not cite or discuss *Barrera-Echavarria*, the 'entry fiction,' or the portions of *Rodriguez II* and *Rodriguez III* that seem to adopt *Barrera-Echavarria's* logic as it pertains to arriving aliens who are detained under § 1225(b) and are subject to the entry fiction." *Ibarra-Perez*, 468 F. Supp.

emphasized that the petitioner would be detained only "'until specified events take place,' i.e., until the resolution of the current removal proceeding . . . [a]nd if Petitioner's removal ceases to become reasonably foreseeable, Petitioner [would] have other potential avenues for seeking release." *Id.* (internal citations omitted).

*Thuraissigiam*, decided shortly after *Ibarra-Perez*, further reinforced that conclusion. Although *Thuraissigiam* arose in the context of admission procedures rather than prolonged detention, it relied on the holding of *Mezei* – which was decided in the detention context. Since *Thuraissigiam*, other courts have concluded that mandatory detention under § 1225(b) does not create a constitutional entitlement to an individualized bond hearing. *See, e.g.*, *Petgrave v. Aleman*, 529 F. Supp. 3d 665 (S.D. Tex. 2021); *Gonzales Garcia v. Rosen*, 513 F. Supp. 3d 329 (W.D.N.Y. 2021); *Leon Alcazar v. Cantu*, No. CV-24-03342-PHX-JAT (DMF), 2025 WL 2548698 (D. Ariz. June 5, 2025), *report and recommendation adopted* 2025 WL 2304357 (D. Ariz. Aug. 11, 2025); *Chavez v. Noem*, 2026 WL 381618 (D. Ariz. Feb. 9, 2026); *Ibarra-Perez*, 468 F. Supp. 3d 1156; *Mamedova v. Noem*, 2026 WL 1162282 (D. Ariz. Apr. 29, 2026); *Savin v. Rivas*, 2026 WL 1162384 (D. Ariz. Apr. 29, 2026).

At the same time, and as illustrated above, the law remains unsettled. The Ninth Circuit has acknowledged that it remains unresolved whether the Due Process Clause requires additional bond procedures under any immigration detention statute. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201 (9th Cir. 2022). Thus, while authority exists supporting Petitioner's concerns regarding prolonged detention, neither the Supreme Court nor Ninth Circuit precedent presently establish a constitutional right to an individualized bond hearing for an arriving alien subject to mandatory detention under § 1225(b).

Furthermore, although in this case Petitioner's detention has been lengthy, the record demonstrates that he has received the procedural protections Congress has provided. Petitioner entered the United States on August 11, 2024, was immediately detained, applied for asylum, and was found not credible by an immigration judge. The immigration judge

---

3d at 1177.

denied Petitioner's motion for reconsideration, and the Board of Immigration Appeals dismissed his appeal. Petitioner filed a petition for review to the Ninth Circuit Court of Appeals, which issued a temporary stay. His detention therefore remains tied to, and time-bound by, the ongoing adjudication of his claims.

The Court notes that this is not a case of indefinite detention. Under *Jennings*, detention authorized by § 1225(b) continues only until specified events occur – namely, the conclusion of immigration proceedings or removal. If Petitioner prevails on appeal, he may obtain release through that process. If he becomes subject to a final order of removal and detention later extends beyond the period authorized by statute, additional remedies are available. *See Ibarra-Perez*, 468 F. Supp. 3d at 1177.

Accordingly, existing Supreme Court and Ninth Circuit precedent do not presently establish a constitutional right to an individualized bond hearing for an arriving alien detained under § 1225(b). Petitioner has been afforded the process authorized by Congress and he is not facing indefinite detention.

## V.    CONCLUSION

Based on the above analysis, the Court finds that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b), and Petitioner is not constitutionally entitled to a bond hearing. The Court will recommend that the Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

Accordingly,

**IT IS THEREFORE RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this Report and Recommendation within which to file specific written objections with the Court. *See* 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's Report and Recommendation. *See* Fed. R. Civ. P. 72.

Dated this 21st day of July, 2026.

_____
Honorable Michael T. Morrissey
United States Magistrate Judge